IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Arthur Butler,                                              Case No. 3:13CV2571

    Plaintiff

    v.                                                      **ORDER**

Time Warner Cable Midwest, LLC,

    Defendant

This is an employment discrimination case in which the plaintiff, Arthur Butler, claims that he lost his job as a serviceman for defendant Time Warner Cable Midwest, LLC (Time Warner) because he is African-American and because he complained about discriminatory treatment against African-American employees.

Pending is defendant's motion for summary judgment. (Doc. 30). For the reasons that follow, I grant the motion.

### Background

Plaintiff started working for Time Warner in 2006 as an Installation/Service Technician, providing service to defendant's cable customers in Lima, Ohio.

In performing his job, plaintiff often had to climb ladders. Beginning in 2008, after a company serviceman had fallen from a ladder, the company adopted a zero-tolerance ladder safety policy for any employee who failed to use safety equipment while on a ladder. In the years since,

and until the time it fired the plaintiff, Time Warner had fired ten employees for violating that policy. Eight of the ten were Caucasian; the other two, like plaintiff, African-American.

Defendant contends that it fired the plaintiff for being on a ladder on July 6, 2011, without his safety equipment. Its decision to do so was based on statements from two of its employees, one of whom was plaintiff's supervisor.

According to the employee, he had told the supervisor, who was nearby, that he had driven by the location where plaintiff was on a residential service call. The employee told the supervisor that he had seen plaintiff on a ladder about twenty feet above the ground without his hard hat and safety belt.

The supervisor went to the location. As he arrived, he saw the plaintiff on the ladder about twenty feet above the ground without his safety equipment. He parked his car and approached the plaintiff, who was still on the ladder.

The supervisor did not say anything to the plaintiff about what he had seen. He did, though, report the situation to Human Resources.

A few days later Mr. Johnson, an African American supervisor, spoke with the plaintiff about the incident. According to Johnson, plaintiff admitted that he went up the ladder without wearing safety gear. Mr. Johnson reminded plaintiff about the company's zero-tolerance policy and reported his discussion with plaintiff to Human Resources.

Human Resources prepared a Review for Termination form based on the reports about plaintiff's violation of the zero-tolerance policy. Four individuals, including the Department Head,

Area Manager, HR Manager and Department Vice President, unanimously agreed that discharge was the appropriate sanction.

The official responsible for implementing the recommendation, Ms. Zeller, had been on vacation when plaintiff violated the zero-tolerance policy – and also when the four-person review group recommended that plaintiff be fired. She met with plaintiff and asked him about the incident, and plaintiff did not dispute the violation or offer Ms. Zeller any justification for his actions.

Time Warner adopted the review committee's recommendation and fired the plaintiff for violating the zero-tolerance policy.

Before violating the zero-tolerance policy, plaintiff had complained that Time Warner provided him with faulty computer equipment, but gave its white employees adequately functioning equipment. Though he told his supervisor about this, the supervisor did nothing about it.

In addition, plaintiff claims that, when a fellow worker made what plaintiff viewed as a racist comment and plaintiff objected, the supervisor was indifferent. According to plaintiff, his co-worker said that plaintiff would be "nothing but a black greasy spot on the floor." Plaintiff "asked his supervisor if he heard the statement," to which the supervisor responded, "he is just joking." Plaintiff, in turn, said, "[W]ell, I don't joke like that."

Plaintiff filed a discrimination charge with the Ohio Civil Rights Commission. In that filing, which plaintiff made under penalty of perjury, plaintiff stated that his supervisor "observed [him] at a job site descending from a ladder without [his] safety gear (safety hat and harness belt) on." He also stated that he was standing on "the third rung of the ladder" when his supervisor "arrived and saw" him. The OCRC dismissed this first charge.

About a month later, he filed a second OCRC charge, claiming Time Warner had discriminated against him by giving him (but not younger employees) faulty equipment, which impaired his ability to do his job as well as his white counterparts. He also alleged Time Warner fired him because of his age and in retaliation for complaining about age discrimination (*i.e.,* having worse equipment than younger counterparts).

In an earlier suit, plaintiff claimed age and race discrimination. He voluntarily dismissed his age claim and then took a Rule 41 voluntary nonsuit.

His present complaint alleges Time Warner fired him on the basis of his race and in retaliation for complaining that he had worse equipment than white co-workers and that his coworker had made a racist comment.

**Discussion**

**1. Termination**

Plaintiff claims that his violation of the ladder safety policy was not the real reason for his termination. He claims he did not violate the policy, but only had one foot on the bottom rung. Thus, he challenges the *bona fides* of Time Warner's conclusion that he violated the safety policy. In any event, he also asserts that a white co-worker fell off a ladder, was injured, and did not lose his job.

Time Warner contends that plaintiff cannot make out a *prima facie* claim of racial discrimination *vis-a-vis* his firing. I agree.

To make out such claim, plaintiff has to show the company treated a comparably situated white employee more favorably – in this case, that a white worker committed the safety violation, but was not fired. *See, e.g., Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972)).

The problem with plaintiff's contention is that the person to whom he points as a comparator was involved in a ladder incident *before* Time Warner the zero-tolerance policy re. ladder safety. Someone not fired under an old policy (like plaintiff's coworker) is different from, rather than the equivalent to, anyone fired under the new policy (like plaintiff).

Moreover, the company contends – and plaintiff does not dispute – that Time Warner, instead of replacing him with anyone, simply had its remaining employees do the work that plaintiff had been doing.

Plaintiff cannot, therefore, make out a *prima facie* claim of race discrimination *vis-a-vis* his discharge.

Even if he could, he cannot meet his burden of proof re. pretext. Though he now claims he was not on the ladder without safety gear, he previously swore under oath to the OCRC that his supervisor had seen him descending a ladder without his safety equipment. Just like a plaintiff whose evidence is opposition to a motion for summary judgment contradicts prior sworn deposition testimony on that same subject, *e.g.*, *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907–08 (6th Cir. 2006), the plaintiff here cannot try to back away from an earlier sworn statement that supports the defendant' motion, *e.g.*, *Tartt v. Wilson Cnty., Tenn.*, --- F. App'x ----, 2014 WL 6780712, *4 (6th Cir.).

There is, therefore, no admissible evidence on which a rational jury could reach any other conclusion as to the *bona fide* basis for Time Warner's decision to fire the plaintiff. After adopting

the policy, Time Warner fired ten other employees – eight of whom were white (including one who had the same supervisor as the plaintiff).[1]

## 2. Retaliation

In his opposition to defendant's motion for summary judgment, plaintiff asserts a new and different factual basis for his retaliation claim – namely, that he told an African-American manager about biased views held by other employees.

As already noted, he cannot do so at this stage of the case. I agree, accordingly, with the defendant that plaintiff's failure to address its arguments *vis-a-vis* his retaliation claim in his opposition to its motion for summary judgment constitutes abandonment of that claim.[2]

In any event, plaintiff cannot prevail on his retaliation claim, no matter what its alleged factual basis. This is so for several reasons.

First, with regard to the inferior equipment contention, there is no evidence that whatever problems he may have had doing his job adequately because he had defective equipment played any role in the decision to fire him. Though plaintiff had had prior disciplinary write-ups, Time Warner

---

[1] As Time Warner's reply points out, plaintiff's last-minute attempt to attribute mixed motives to those who invoked the zero-tolerance rule is unavailing. A litigant cannot bring up a theory of relief in opposing a summary-judgment motion that he did not allege in his administrative charge, *e.g.*, *Abetia v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir. 1998), or his complaint, *e.g.*, *Desparois v. Perrysburg Exempted Village School Dist.,* 455 F. App'x 659, 666 (6th Cir. 2012). Aside from this contention being too little, too late, as the company also argues, where the plaintiff fails to present proof of any motive other than its asserted basis for its decision, the plaintiff cannot prevail on a mixed motive contention. *E.g., Wright v. Murray Guard, Inc.,* 455 F.3d 702, 720–21 (6th Cir. 2006).

[2] I also agree with Time Warner that plaintiff has abandoned his contentions about his complaints re. inferior equipment by failing to respond to defendant's arguments on that issue.

did not justify its decision to fire plaintiff on that basis; rather, it relied on plaintiff's violation of the zero-tolerance safety policy.

Second, there is no evidence that the decision-makers who recommended plaintiff's termination were aware that plaintiff had complained about his coworker's comments to the African-American manager. This is a *sine qua non* of any retaliation claim. *E.g.*, *Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 374 (6th Cir. 2013).

Third: the race-disparaging remark and supervisor's indifference to it was an isolated incident that, at most, suggested bias on the part of the co-worker and, to an even lesser extent, the part of the supervisor. Similarly isolated, but substantially more bias-laden comments do not give rise to a reasonable inference that bias played a role in a later disciplinary decision. *E.g.*, *Anderson v. Otis Elevator Co.,* 923 F. Supp. 2d 1032, 1084 (E.D. Mich. 2013).

Fourth, the temporal gap between his complaints and plaintiff's termination is too broad to support a reasonable inference of a causal connection between the one and the other. *E.g., Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986).

Even if plaintiff could overcome those hurdles to making out a *prima facie* case of retaliation, his claim collapses on its collision into the wall of the zero-tolerance policy. For the same reasons that compel dismissal of his claim of race-based termination, plaintiff cannot show that defendant's reliance on his violation of the zero-tolerance policy was pretextual.

## Conclusion

The company concluded, and had a substantial, good faith basis for doing so, that plaintiff climbed a ladder without his mandatory safety equipment. Ten other employees, including eight

7

white employees, lost their jobs for violating that zero-tolerance policy. No rational jury could find that race played any role whatsoever in plaintiff's loss of his job.

Likewise, no rational jury could find that his modest, one-off complaints about faulty equipment and a race-disparaging remark had any effect on the company's decision to fire him once it determined in good faith that he had ignored its zero-tolerance ladder safety policy.

It is, accordingly,

ORDERED THAT defendant's motion for summary judgment (Doc. 30) be, and the same hereby is granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge